UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

+--------------------------------------------+
| USDC-SDNY                                   |
| DOCUMENT                                    |
| ELECTRONICALLY FILED                        |
| DOC#:                                       |
| DATE FILED:        11-20-20                  |
+--------------------------------------------+

BRANDON H. MICHAELS,

                Plaintiff,

      v.

ADEE DREXLER AND INFINITY
CREATIVE AGENCY,

                Defendants.

No. 20-CV-1776 (RA)

<u>MEMORANDUM
OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiff Brandon Michaels brought this breach-of-contract action against Defendants Adee Drexler and Infinity Creative Agency, alleging that they failed to compensate him for services they orally contracted for him to provide in 2019. Plaintiff filed suit in February 2020 in New York Supreme Court, and Defendants subsequently removed the action to federal court. *See* Dkt. 1. Before the Court is Defendants' motion to transfer this case to the Central District of California, on the grounds that (1) venue is not proper in the Southern District of New York under 28 U.S.C. § 1391(c); and (2) even if venue were proper in this District, the Court should exercise its discretion to transfer the case to the Central District of California for the convenience of the parties and witnesses and in the interests of justice, *see* 28 U.S.C. § 1404. *See* Dkt. 6. For the following reasons, Defendants' motion is denied.

## BACKGROUND

Except where otherwise noted, the following facts are drawn from Plaintiff's complaint and are assumed to be true for purposes of resolving the motion. *See Brown v. Web.com Grp., Inc.*, 57 F. Supp. 3d 345, 353 (S.D.N.Y. 2014). This lawsuit arises out of agreements reached

between Plaintiff and Defendants between July and October 2019. Plaintiff works in the

entertainment industry and has a working relationship with the recording artist Jennifer Lopez

and her manager Benny Medina. *See* Compl., Dkt. 1 at 7–16, ¶ 10; Pl. Mem., Dkt. 15, at 2.

Defendant Adee Drexler, who resides in Los Angeles County, is the founder and CEO of

Defendant Infinity Creative Agency, a Los Angeles-based "consulting, marketing, and

brand/talent management" agency. Compl. ¶¶ 6–7; Drexler Decl., Dkt. 6-3, ¶¶ 8–9.[1] Although

there is some ambiguity in the record as to whether Plaintiff is located in New York, California,

or a combination of the two,[2] Drexler attests that all relevant communications between the

parties took place in Los Angeles. *See* Drexler Decl. 10.

In July 2019, Drexler offered to partner with Plaintiff and requested that he travel to Los

Angeles, where she began "seeking [Plaintiff's] guidance and accepting his assistance and

---

[1]   Whereas the complaint alleges that ICA has offices in California, New York, and London, Drexler's declaration states that ICA has never had "any brick and mortar establishments" other than in Los Angeles. Drexler Decl. ¶ 7.

[2] According to the complaint, Plaintiff is a resident of Westchester County, New York. Compl. ¶ 1. However, an affirmation filed alongside the complaint by Plaintiff's counsel (and father, it would appear) attests that Plaintiff "lives in Los Angeles, CA." *See* Dkt. 1 at 16. Seeing an apparent contradiction, Defendants now argue that "[e]ither Plaintiff or his father Robert Michaels is not telling the truth." Defs.' Reply Mem., Dkt 18, at 1. Plaintiff's declaration, however, potentially resolves the apparent contradiction: "Through all relevant periods,"—i.e., during the stretch of 2019 in question—"New York was and remains my primary residence. During the relevant periods, I did not maintain a California residence, *only recently securing an apartment in California* to use during work-related activities there." Michaels Decl., Dkt. 16, ¶ 2 (emphasis added). Construing the complaint's allegations as true and resolving all ambiguities in the Plaintiff's favor, the Court finds that his counsel's affirmation notwithstanding, Plaintiff has sufficiently pled that he is a resident of New York. *See Brown*, 57 F. Supp. 3d at 353.

The Court further notes that the basis for Defendants' removal of this action to federal court was to invoke diversity jurisdiction, which depends critically on Defendants' assertion that Plaintiff is, as he alleges in the complaint, a citizen of New York. *See* Notice of Removal, Dkt. 1, at 2; *see also* 28 U.S.C. § 1332. If Defendants were correct that Plaintiff is domiciled in California, *see* Defs.' Reply Mem. at 1, this Court (or any federal court) would be without jurisdiction.

services," including with respect to a birthday party in Miami for Jennifer Lopez. Compl. ¶ 15. At a July 29, 2019 meeting, the parties "discussed a deal with IMG Modeling" where the parties would be "the direct brand source for all of the IMG models." *Id*. ¶ 18. IMG is based in New York. Michaels Decl. ¶ 4. The parties also "review[ed] the work Plaintiff was performing and would perform as part of their partnership arrangement and agreed that Plaintiff's base annual compensation would be $150,000." Compl. ¶ 17. In August 2019, the parties discussed the renewal of a contract for Quay, a client of ICA, and Drexler "promised to share the commission on the Quay contract renewal with Plaintiff upon the successful execution of the renewal." Compl. ¶¶ 22-23. At Defendants' request, Plaintiff represented ICA at a Video Music Awards afterparty of which Quay was one of the sponsors. *Id*. ¶ 24. The afterparty took place in New York. Michaels Decl. ¶ 4. Plaintiff continued to provide advice, guidance and assistance to Defendants with respect to the renewal of the Quay contract, which closed in September 2019. Compl. ¶¶ 27–29. Plaintiff also continued to work on other projects with Defendants, who arranged an October 23, 2019 meeting in Los Angeles for Plaintiff to meet certain other ICA clients, and "informed [him] that these clients would be in his direct purview." *Id*. ¶ 31. In the final months of 2019, Plaintiff reached out to Drexler on several occasions to inquire about compensation, but he received no response and Defendants have failed to compensate him to date. *Id*. ¶¶ 34–38.

On February 6, 2020, Plaintiff filed suit in Supreme Court, New York County, charging principally that Defendants breached their contracts by failing to compensate Plaintiff and to share with him proceeds of the Quay contract renewal. *Id*. ¶ 40. Defendants timely removed the action to this Court, invoking diversity jurisdiction based on Plaintiff's residing principally in New York and Defendants' residing principally in California, and an amount in controversy in excess of

$75,000. *See* Notice of Removal, Dkt. 1, at 2-3; *see* 28 U.S.C. § 1332. On March 18, 2020, Defendants filed the instant motion to change the venue of this action to the United States District Court for the Central District of California. *See* Dkt. 6. Defendants argue first that venue in this District is improper under 28 U.S.C. § 1391, asserting that all the Defendants are located in California and all the communications that allegedly gave rise to binding contracts took place in Los Angeles. *See* Dkt. 6-1 at 4. Defendants further argue that the Court should transfer this action to the Central District of California under 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interests of justice. *Id*. at 5. Plaintiff defends the propriety of venue in this District, arguing that he substantially provided his services and advice in New York, and argues that the discretionary factors courts consider under § 1404(a) support retaining the action in New York. *See* Dkt. 15. The Court held an initial status conference on April 24, 2020 and stayed discovery pending resolution of Defendants' motion. *See* Dkt. 19.

## LEGAL STANDARDS

A civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). In breach-of-contract actions, courts determine where "a substantial part of the events or omissions giving rise to the claim occurred" by looking to "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97 CIV. 6308 (DC), 1998 WL 397889, at *4

(S.D.N.Y. July 16, 1998). At this stage of the litigation, Plaintiff must only "plead facts sufficient for a prima facie showing of . . . venue," and "[t]he court construes all of the plaintiff's allegations as true and resolves all doubts in [his] favor." *Brown*, 57 F. Supp. 3d at 353.

Under Section 1404(a), a court may transfer a civil action to any other district where the suit may have been initially brought "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The party requesting a change of venue carries the "burden of making out a strong case for transfer." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (citation omitted). "The determination whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). Some of the discretionary factors a court may consider in assessing "convenience and fairness . . . on a case-by-case basis" include "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106–07 (2d Cir. 2006) (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002)). In a breach of contract case, the "locus of operative facts" inquiry looks at "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 842 (S.D.N.Y. 2012) (internal quotation marks and citations omitted).

In evaluating a Section 1404 motion, courts conduct a two-part inquiry, asking (1) whether the action sought to be transferred is one that could have been brought in the transferee

court, and (2) whether a transfer is appropriate considering the convenience of the parties and witnesses and the interest of justice. *See Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 180 (W.D.N.Y. 1997).

## DISCUSSION

### I.      Venue is Proper in This District

Defendants first argue that venue is not proper in this District, asserting "[t]here is no evidence showing that any of the events or communications giving rise to Plaintiff's contractual theories took place in New York." Defs.' Mem. At 4. They note that Plaintiff's claims stem from breaches of alleged oral promises made by Drexler, and that all communications between Drexler and Michaels took place in Los Angeles. *Id*. (citing Drexler Decl. ¶ 10). The Court disagrees.

In determining whether venue is proper under § 1391(b)(2), the Court considers not only "where the contract was negotiated or executed," but also "where it was to be performed, and where the alleged breach occurred." *Prudential Sec.*, 1998 WL 397889, at *4 (S.D.N.Y. July 16, 1998). Here, although the contracts were allegedly created in Los Angeles, Plaintiff alleges that he was to perform (and did perform) substantial components of his contractual obligations in New York, including work on behalf of IMG Modeling, which is based in New York, and work at the Video Music Awards afterparty in New York. *See* Compl. ¶¶ 18, 24; Michaels Decl. ¶¶ 4–6. Construing, as it must, all allegations in Plaintiff's favor, the Court finds that Plaintiff has made out a *prima facie* case that a "substantial part of the events or omissions giving rise to the claim occurred" in New York, and that venue is therefore proper in this District under Section 1391(b)(2).

## II.       Discretionary Factors Weigh Against Transferring the Case to the Central District of California

Defendants next urge the Court to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses, [and] in the interest of justice." Motions to transfer under Section 1404 involve a two part inquiry, asking first, whether the action could have been brought in the transferee venue, and second, whether the court in its discretion finds transfer to be appropriate. *See Wilshire Credit Corp.*, 976 F. Supp. at 180. The Court concludes that, while this action could have initially been brought in the Central District of California, Defendants have failed to carry their "burden of making out a strong case for transfer." *New York Marine*, 599 F.3d at 114.

As an initial matter, it is plain that this action could have been brought in the Central District of California. A civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). In this case, all Defendants are residents of California. It is undisputed that Drexler personally resides in the Central District of California, and that Defendant Infinity Creative Agency's principal place of business is in Los Angeles. *See* Drexler Decl. ¶¶ 6, 9. Moreover, even if, as discussed above, venue is proper in the Southern District of New York because "a substantial part of the events or omissions giving rise to the claim occurred" here, *see* 28 U.S.C. § 1391(b)(2), it is also clear that a substantial part of the events giving rise to Plaintiff's claim occurred in Los Angeles, as that is where the alleged contracts were indisputably formed. *See* Drexler Decl. ¶ 10; Compl. ¶¶ 13–18. The Court therefore finds that this action could have been commenced in the transferee district.

Having found that the action could have been brought in the Central District of California, the Court turns to the discretionary inquiry of whether transferring the case would best serve the parties and the interests of justice.

The first factor the Court considers is the plaintiff's choice of forum. Plaintiff chose to initiate this action in New York, and that choice must be given substantial weight. *See Fteja,* 841 F.Supp.2d at 833 ("[B]ecause a court's discretion to transfer an action 'must be exercised at the very outset of the case, when relatively little is known about how the case will develop, courts have typically accorded substantial weight to the . . . plaintiff's choice of forum.'" (quoting *Atl. Recording Corp. v. Project Playlist, Inc.,* 603 F.Supp.2d 690, 695 (S.D.N.Y.2009)) (alteration in original)). Plaintiff asserts that it is "very important [to him] that this matter proceed in New York," as New York is his primary residence, and because litigating in California and obtaining new counsel would involve "substantial cost." Michaels Decl. ¶ 3. This factor clearly favors retaining the action in New York.

The second factor is the convenience of witnesses. Defendants assert that "[a]ll material witnesses live in Los Angeles, California and are not subject to compulsory process to compel their attendance in the Southern District of New York." Dkt. 6 at 2; *see also* Defs.' Reply Mem. at 3 ("Defendants would be forced to arrange travel and lodging for many Los Angeles residents to attend trial in New York and testify before this Court, assuming they would voluntarily comply."). But neither Defendants' submissions nor Drexler's declaration identifies a single one of these "many Los Angeles residents" whose testimony they intend to seek. "Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a)." *Orb Factory, Ltd. v. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d

203, 208–09 (S.D.N.Y. 1998). Because the parties do not identify any key witnesses or why their testimony would be necessary, this factor does not strengthen Defendants' case for transferring venue. The same can be said with regard to another factor, "the availability of process to compel the attendance of unwilling witnesses." *D.H. Blair*, 462 F.3d at 107.

The third factor to consider is the location of relevant documents and the relative ease of access to sources of proof. But the parties do not mention any relevant documents, and, moreover, "[t]he location of relevant documents is not a major consideration in an era of electronic records and eDiscovery." *DataCatalyst, LLC v. Infoverity, LLC*, No. 20 CIV. 310 (AKH), 2020 WL 1272199, at *4 (S.D.N.Y. Mar. 17, 2020). This factor is thus inapposite to the instant inquiry.

The fourth factor is the convenience of the parties. It is apparent from Defendants' motion, and Plaintiff's opposition thereto, that Defendants see California as a more convenient venue, while Plaintiff views New York as the more convenient venue. Defendants, however, characterize Michaels as being located in Los Angeles, *see* Defs.' Mem. at 4, and accuse him of misleading the Court by stating that he is a resident of New York, *see* Defs.' Reply Mem. at 1. The Court notes the contradictory nature of Defendants' stance—it was they who removed this action to federal court on the basis of diversity jurisdiction, which depends critically on their assertion that Plaintiff maintains his "principal residence in New York State." Dkt. 1 at 2. In any event, the Court accepts as true Plaintiff's allegation that he resides primarily in New York, *see* Compl. ¶ 1; Michaels Decl. ¶¶ 1, 7, and therefore takes at face value his preference for the litigation to proceed in New York. Nonetheless, given that Plaintiff acknowledges that he "recently secur[ed] an apartment in California to use during work-related activities there," *see*

Michaels Decl. at 2, the Court finds that the convenience of the parties would be slightly enhanced by transfer to California, seeing as Plaintiff appears to spend part of his time there.

The fifth factor is the locus of operative facts, which depends in a breach-of-contract case on "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *Fteja*, 841 F. Supp. 2d at 842. In this case, both New York and California can stake a claim to being the locus of operative facts. As discussed above, Plaintiff alleges that substantial parts of the contract were or were meant to be performed in New York, including his work at the Video Music Awards afterparty and work on behalf of IMG Modeling. *See supra* at 6; Michaels Decl. ¶ 4. However, it is clear that a significant portion of the relevant events also took place in the Los Angeles area, including all communications between Michaels and Drexler and the alleged formation of the contracts. *See* Drexler Decl. ¶ 10; Defs.' Mem. at 5. These events may be of particular relevance to the outcome of the litigation, as it is likely that the court will have to resolve whether valid and binding oral contracts were in fact formed between the parties at their 2019 meetings in Los Angeles. *See* Defs.' Reply Mem. at 2. Accordingly, although the Central District of California may best be seen as the "locus of operative facts," this factor only slightly favors transfer, as both New York and California are places where a "substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

The Court may also consider the relative financial means of the parties. Plaintiff argues that, "[u]pon information and belief, Drexler has a substantial net worth and her corporation, ICA, generates substantial revenue. Plaintiff is 25 years old and at the start of his career. Plaintiff's means are substantially less than those of Defendants." Pl. Mem. at 9. But the only statement contained in the complaint or declarations concerning the parties' relative means is

Plaintiff's unsubstantiated assertion that "Defendants have far superior assets and would not suffer the same financial injury" from litigating this case in New York as Plaintiff would from litigating in California. Michaels Decl. ¶ 7. "[W]here proof of [financial] disparity is not adequately provided, or does not exist, this is not a significant factor to be considered." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (quoting *Orb Factory*, 6 F.Supp.2d at 210). The Court accordingly declines to place significant weight on Plaintiff's assertions regarding the parties' relative means.

Weighing these factors, the Court concludes that Defendants have not carried their "burden of making out a strong case for transfer." *New York Marine*, 599 F.3d at 114. Even if, as the Court has found, Los Angeles is marginally better seen as the locus of operative facts (because that is where the contracts were formed) and California would be a marginally more convenient place to litigate (because Plaintiff appears to spend at least part of his time there), these are not dispositive differences. They are not, in the Court's view, sufficient to overcome the substantial weight given to the Plaintiff's choice of forum. See *U.S. Commodity Futures Trading Comm'n v. Wilson*, 27 F. Supp. 3d 517, 537 (S.D.N.Y. 2014) (citation and quotation marks omitted) (party requesting transfer must make "*a strong showing* that the balance of convenience and the interest of justice weigh *heavily* in favor of transfer") (emphasis added). Under these circumstances, the Court declines to disturb Plaintiff's choice to litigate in New York, and will retain the action in this District.

## CONCLUSION

For the reasons set forth above, Defendant's motion to transfer this action to the Central District of California is denied. Within 21 days of this order, Defendants shall answer, respond, or otherwise move with respect to the complaint. Within 45 days of this order, the parties shall

jointly submit a letter containing (a) a brief description of all contemplated and/or outstanding motions; (b) a brief description of any discovery that has already taken place, and/or that which will be necessary for the parties to engage in meaningful settlement negotiations; (c) a brief description of prior settlement discussions (without disclosing the parties' offers or settlement positions) and the prospect of settlement. Also within 45 days of this order, the parties shall jointly submit a second proposed case management plan with adjusted deadlines for discovery. A template for the order is available at https://nysd.uscourts.gov/hon-ronnie-abrams.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 6.

SO ORDERED.

Dated:      November 20, 2020
            New York, New York

                                        _____
                                        Ronnie Abrams
                                        United States District Judge